UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELIJAH SHAW,<br>　　　*Plaintiff*, | )<br>)<br>) | CASE NO. 3:24-cv-00654 (KAD) |
| v. | )<br>) | |
| CRAIG WASHINGTON, *et al.*,<br>　　　*Defendants*. | )<br>) | MAY 8, 2024 |

### INITIAL REVIEW ORDER

Kari A. Dooley, United States District Judge:

Plaintiff, Elijah Shaw ("Shaw"), a pre-trial detainee at Corrigan Correctional Center, filed this complaint *pro se* under 42 U.S.C. § 1983 against Department of Correction ("DOC") employees Craig Washington, Captain Papoosha, and Correctional Officer Zack (together "Defendants"). Shaw seeks damages and injunctive relief for violation of his First Amendment right to freedom of speech and his Fourteenth Amendment right to substantive and procedural due process.

**Standard of Review**

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a)–(b). In reviewing a *pro se* complaint, the Court must assume the truth of the allegations and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic*

*v. Twombly*, 550 U.S. 544, 555–56 (2007).  Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

Shaw is a pre-trial detainee at Corrigan Correctional Center, Compl., ECF No. 1 at ¶ 2, but he re-entered the Connecticut Department of Correction through the New Haven Correctional Center on December 29, 2023. *Id.* at ¶ 7. Upon entry, he was immediately placed in the Restrictive Housing Unit ("RHU") without proper notice. *Id.* Shaw was in the RHU from December 29, 2023, to January 9, 2024. *Id.* at ¶ 9. While there, Shaw was "treated as a Box inmate." *Id.* Shaw was not allowed to order commissary, recreate with other inmates, interact with other inmates in general population, and was hand-cuffed behind his back while transported to and from the medical unit. *Id*. at ¶ 9. Shaw was also denied visits with family. *Id.* at ¶ 10.

Defendant Zack did not inform Shaw why he had been placed in the RHU. *Id.* at ¶ 11. Zack instead attempted to have Shaw self-admit to the RHU. *Id.* Shaw refused to self-admit to the RHU because he was not a gang member. *Id.* at ¶ 12. Zack, who is a "D.R. intel investigator," was tasked with informing inmates of administrative procedures. *Id.* at ¶ 13. But Zack did not do that. *Id.* Instead, Zack informed Shaw about photographic evidence he had gathered against Shaw from social media. *Id.* at ¶ 14. Shaw was "found guilty" at a hearing and placed in "Phase 2 SRG programming." *Id.* at ¶ 15.

Defendants Washington and Papoosha oversee the "Affiliation Procedures." *Id.* at ¶ 16. Shaw maintains he did not communicate with anyone in the SRG unit, his charge had nothing to do with gang activity, and the social media photographs that were used to place Shaw in the SRG unit were over two years old. *See id.* at ¶ 17. The conditions in the SRG unit are "harsh." *Id.* at ¶

2

18. Shaw only receives three phone calls per week, and he can receive visits only from immediate family members. *Id.* at ¶ 19. This restriction has strained Shaw's relationship with his girlfriends. *Id.* As an SRG inmate, Shaw is denied proper programming, addiction services, religious services, and property, such as electronics and hygienic supplies. *Id.* at ¶ 20. Shaw is not given proper cleaning products, his cell is not cleaned, and he is denied proper medical and mental health treatment. *Id.* at ¶ 21. Shaw has also been denied access to the law library because of his SRG status. *Id.* at ¶ 23. Shaw claims that imprisonment in the SRG unit is normally limited to two months, but he expects to stay in the unit for five months. *Id.* at ¶ 22. Shaw has not received any disciplinary tickets while at the prison. *Id.*

Shaw maintains that Defendants violated his First Amendment right by punishing him and subjecting him to hardship because of old photographs on social media. *Id.* at ¶ 25. He also claims that Defendants have violated his Fourteenth Amendment right to substantive and procedural due process by placing him in a restrictive unit. *See id.* at ¶ 26. Shaw is seeking $100,000 in compensatory damages and $75,000 in punitive damages against each defendant. *Id.* at ¶¶ 27–28. Shaw also seeks injunctive relief—namely an order removing Shaw from the SRG unit and placing him back in general population. *Id.* at ¶ 29.

**Discussion**

Shaw asserts three claims: 1) a First Amendment retaliation claim related to Defendants use of his social media content as a basis to place him in restrictive housing, 2) a Fourteenth Amendment substantive due process claim related to his placement in restrictive housing, and 3) a Fourteenth Amendment procedural due process claim related to his placement in restrictive housing. This Court considered similar allegations in *Caves v. Payne*, 2020 WL 1676916 (D. Conn. 2020). The plaintiff in that case claimed violations of the same constitutional rights arising out of

his placement in the SRG program based upon his social media content. Thus, the Court's decision in *Caves* will guide its decision here.

**First Amendment Claim**

Shaw was "found guilty" at his hearing based on photographic evidence that Zack had gathered from Shaw's social media account. *See* Compl. at ¶¶ 14–15. Shaw claims that punishing him with restrictive housing for those photographs violated his First Amendment rights. *See id.* at ¶ 25. Because Shaw claims he was punished by prison officials for exercising his First Amendment right to freedom of speech, the Court construes this claim as a First Amendment retaliation claim. *See Caves*, 2020 WL 1676916, at *3 (construing a prisoner's claim that he was placed in the SRG unit because of his social media posts as a First Amendment retaliation claim).

To state a cognizable First Amendment retaliation claim, Shaw must allege: "(1) that the speech or conduct at issue was protected, (2) that the defendant[s] took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)).

While a prisoner's social media posts are protected speech under the First Amendment, and the prisoner's placement in restrictive housing is properly alleged to be "adverse action against the plaintiff," *see Caves,* 2020 WL 1676916 at *3, Plaintiff has not alleged a causal connection between the exercise of his First Amendment rights and the adverse action. *Caves*, 2020 WL 1676916, at *4.

Plaintiff's placement in restrictive housing was not motivated by the exercise of his free speech rights—his speech simply offered the evidentiary basis for the Defendants' decision to place him in restrictive housing. In *Caves,* this Court reasoned as follows:

4

> "Caves' designation was not made to punish him for posting on social media or to deter him from doing so in the future. Rather the social media posts were merely the evidence used to support his SRG designation. The defendants' use of social media posts and Caves' own statements therein, is no different than if Caves announced upon his arrival at the facility that he was a gang member and the defendants used those statements to designate him to the SRG unit."

*Id.* Accordingly, the First Amendment retaliation claim is dismissed. With respect to the due process claims, the Court similarly applies its reasoning in *Caves* to the current case.

**Fourteenth Amendment Substantive Due Process Claim**

Shaw claims that Defendants violated his Fourteenth Amendment right to substantive due process by placing him in restrictive housing. *See* Compl. at ¶ 26. "A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether ... by deliberate indifference to conditions of confinement, or otherwise." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d. Cir. 2017). A pretrial detainee can state a substantive due process claim regarding the conditions of his confinement in two ways. He can show that the defendants were deliberately indifferent to the conditions of his confinement, or he can show that the conditions are punitive. *Id.* at 34 n.12. Shaw alleges both. *See* Compl. at ¶ 26.

To state a claim for deliberate indifference, Shaw first must show that the challenged "conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Darnell*, 849 F.3d at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)) (internal quotation marks omitted). "[T]he conditions themselves must be evaluated in light of contemporary standards of decency." *Id.* (citation and internal quotation marks omitted). This inquiry focuses on the "severity and duration" of the conditions, "not the detainee's resulting injury." *Id.* (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015)). Conditions are also considered in combination where one combines with another to affect at least one identifiable human need. *See Wilson v. Seiter*, 501

U.S. 294, 304 (1991); *see also Darnell*, 849 F.3d at 32 ("the conditions must be analyzed in combination, not in isolation, at least where one alleged deprivation has bearing on another").

Shaw alleges that during his expected five-month stay in the SRG unit, he only receives three phone calls per week and can only receive visits from immediate family members. Compl. at ¶ 19. He alleges that he is denied proper programming, addiction services, religious services, and property, such as electronics and hygienic supplies, that he is not given proper cleaning products, his cell is not cleaned, and that he is denied proper medical and mental health treatment. *Id.* at ¶¶ 20–21. Finally, he alleges he has been denied access to the law library. *Id.* at ¶ 23. For initial review purposes only, these facts are sufficient to allege objectively serious deprivations. *See Caves*, 2020 WL 1676916, at *5 (plaintiff showed objectively serious deprivations when "for 380 days, he was confined to his cell for twenty-three hours per day, had to eat in his cell in close proximity to the toilet, had to shower in unsanitary shower stalls, could visit only with immediate family, had restrictions on phone calls and commissary purchases, was denied exercise, and could not participate in any programs.").

Shaw must also show that "the defendant-official acted intentionally to impose the alleged condition" or "recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Shaw alleges Defendants intentionally subjected him to harsh conditions of confinement because they believed he was a gang member. *See* Compl. at ¶¶ 14–15. Shaw has plausibly alleged intentional conduct or, at a minimum, a reckless failure to act with reasonable care to minimize the risk to which he was or will be exposed. *See Caves*, 2020 WL 1676916, at * 5 (concluding the same on similar facts).

As noted above, substantive due process is violated if the pretrial conditions are punitive. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In considering such a claim, the "court must decide whether the [condition] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. Absent evidence of an "expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it." *Id.* (internal citations and punctuation omitted) "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* at 539.

Conversely, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment." *Id.* Legitimate government objectives include "maintain[ing] security and order at the institution and mak[ing] certain no weapons or illicit drugs reach detainees," "ensuring the detainees' presence at trial," and managing the facility where the detainee is held. *Id.* at 540.

Shaw alleges he was placed in restrictive housing based on social media photographs without considering his explanation. Compl. at ¶¶ 12, 15. Although Shaw alleges that his designation was reviewed at a hearing, the allegations suggest that there was no individualized finding that Shaw posed a risk to institutional security, or that segregated housing was appropriate for him during pretrial detention. *Id.* at ¶ 15. Accordingly, Shaw's substantive due process claim that his conditions of confinement are punitive may proceed. *See Caves*, 2020 WL 1676916, at *6 (concluding the same on similar facts).

**Fourteenth Amendment Procedural Due Process Claim**

Shaw last contends that Defendants violated his right to procedural due process at his hearing by "[a]rbitar[i]ly or [m]aliciously" finding him guilty and placing him in restrictive housing. Compl. at ¶ 15. On a procedural due process claim, the court evaluates only the procedures used for the hearing officer to reach his decision. *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017). The level of procedural protection required depends on the purpose of the hearing. *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987). For a disciplinary proceeding, an inmate is entitled to advance written notice of the charge, adequate time to prepare a defense, a written statement of the reasons for the disciplinary action taken, and a limited opportunity to present witnesses and evidence in his defense. *Wolff v. McDonnell*, 418 U.S. 539, 561–70 (1974). For an administrative proceeding, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983).

Shaw claims he was "immediately, and [m]aliciously found guilty" at the hearing. Compl. at ¶ 15. He claims there "was no updated valid pictures/proof" and "no other evidence[ ]" presented. *Id.* Although it is clear that Shaw received a hearing, Shaw's claim that he was "immediately" "found guilty" suggests, at this initial stage, that he may not have been given an opportunity to present his views at the hearing. Therefore, Shaw's procedural due process claim may proceed for further development of the record. *See Caves*, 2020 WL 1676916, at *7 (concluding the same after considering similar facts).

**Official Capacity Claims**

Shaw seeks monetary damages from the Defendants. *See* Compl. at ¶¶ 27–28. The Eleventh Amendment prohibits an award of monetary damages against state officials in their official

capacities unless the state has waived this immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 343 (1979), and Shaw alleges no facts suggesting that the State has waived immunity in this case. Thus, Shaw cannot receive damages from the Defendants in their official capacities. Any claim for damages against the Defendants in their official capacities is dismissed pursuant to 28 U.S.C. § 1915A(b)(2). *See Caves*, 2020 WL 1676916, at *8 (concluding the same after considering similar facts).

**Injunctive relief**

Shaw also seeks prospective injunctive relief. He asks the Court to enter an order removing him from restrictive housing and placing him back in general population. Compl. at ¶ 29. "[T]he Eleventh Amendment does not preclude suits against state officials acting in their official capacity that seek prospective injunctive relief." *Kuck v. Danaher*, 822 F. Supp. 2d 109, 141 (D. Conn. 2011); *Ex parte Young*, 209 U.S. 123 (1908). Thus, while Shaw cannot sue the Defendants in their official capacity for money damages, he can sue them in their official capacity for prospective injunctive relief. Shaw's claims for prospective injunctive relief against Defendants may proceed.

**Orders**

Shaw's First Amendment claim is dismissed. The Fourteenth Amendment substantive due process and procedural due process claims may proceed. Shaw may only sue the Defendants for damages in their individual capacities. But Shaw may sue Defendants in their official capacity for prospective injunctive relief.

The Court enters the following additional orders:

(1) **The Clerk shall** verify the current work address for each Defendant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request

packet to each Defendant at the address provided on or before **May 29, 2024**, and report to the Court on the status of the waiver request on the thirty-fifth day after mailing. If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the Defendant in his or her individual capacity and the Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service which shall include the Complaint. The U.S. Marshal is directed to effect service of the Complaint on the Defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, on or before **May 29, 2024** and to file a return of service on or before **June 4, 2024.**

(3) **The Clerk shall** send Shaw a copy of this Order.

(4) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by December 9, 2024. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed on or before January 8, 2025.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the

response is not timely, the dispositive motion can be granted absent objection.

(9) If Shaw changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. **Failure to do so can result in the dismissal of the case**. Shaw must give notice of a new address even if he is incarcerated. Shaw should write **PLEASE NOTE MY NEW ADDRESS** on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Shaw has more than one pending case, he should indicate all the case numbers in the notification of change of address. Shaw should also notify the Defendants or the attorney for the Defendants of his new address.

(10) Shaw shall utilize the Prisoner Efiling Program when filing documents with the court. Shaw is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 8th day of May 2024.

                                         */s/ Kari A. Dooley*
                                         KARI A. DOOLEY
                                         UNITED STATES DISTRICT JUDGE